**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

Tuwanna Carmouche, *individually and on behalf of others similarly situated*,

Plaintiff,

v.

A1 Diabetes & Medical Supply, Inc.,

Defendant.

Case No. 2:21-cv-02557-JPM-atc

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CLASS ALLEGATIONS WITH PREJUDICE**

---

## Table of Contents


Introduction ........ 1

Statement of Relevant Facts ........ 1

Argument ........ 3

I. This Court should deny Defendant's motion to dismiss Plaintiff claims. ........ 3

A. Artificial or prerecorded voice messages that Defendant delivered to Plaintiff's cellular telephone, but which were intended for someone other than Plaintiff, do not fall within the TCPA's "emergency purposes" exception. ........ 3

B. In any event, artificial or prerecorded voice messages that Defendant delivered to Plaintiff's cellular telephone, after Plaintiff informed Defendant not to do so, do not fall within the TCPA's "emergency purposes" exception. ........ 6

1. The TCPA's "emergency purposes" exception does not apply to post cease-and-desist artificial or prerecorded voice messages. ........ 6

2. Defendant does not cite any authority that stands for the proposition that the TCPA's "emergency purposes" exception applies to artificial or prerecorded voice messages delivered after a cease-and-desist statement. ........ 8

3. The FCC's COVID-19-related declaratory ruling does not suggest that the TCPA's "emergency purposes" exception applies to artificial or prerecorded voice messages delivered after a recipient's cease-and-desist statement. ........ 9

4. Artificial or prerecorded voice messages from a healthcare provider do not automatically fall within the TCPA's "emergency purposes" exception. ........ 11

II. This Court should deny Defendant's motion to strike Plaintiff's class allegations. ........ 13

A. A court should strike class allegations only where it is convinced that "under no set of circumstances" could it certify the proposed class, regardless of what discovery may ultimately show. ........ 13

B. It is premature for this Court to decide whether Plaintiff can satisfy Rule 23(b)(3)'s predominance requirement based solely on the pleadings. ........ 14

1. This Court will not have to make individualized inquiries regarding the artificial or prerecorded voice messages at issue to determine if they fall within the TCPA's "emergency purposes" exception. ........ 18

2. Defendant's suggested "reasonable reliance" defense cannot preclude a finding that Plaintiff may be able to satisfy Rule 23(b)(3)'s predominance requirement. ........ 22

III. Plaintiff's proposed classes are not "fail-safe." ........................................................... 25

IV. Plaintiff's second proposed class is not duplicative of Plaintiff's first proposed class.. 28

V. Defendant's contention that Plaintiff cannot certify a class under Rule 23(b)(2) is premature, misreads Plaintiff's complaint, and is nevertheless meritless. .............................. 29

VI. This Court should not strike Plaintiff's request for trebled damages under the TCPA. 31

## Table of Authorities

### Cases

*Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015).............................. 21, 34

*ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018)................................ passim

*Ahne v. Allis-Chalmers Corp.*, 102 F.R.D. 147 (E.D. Wis. 1984)............................................... 27

*Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768 (11th Cir. 2011).......................... 22, 33

*Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 516 (S.D. Ohio 2012)........................... 16

*Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540 (6th Cir. 2014)........... 22

*Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578 (M.D. Tenn. 2018)........................................... 29

*AMP Automotive, LLC v. BFT, LP*, No. 17-5667, 2019 WL 1409769 (E.D. La. Mar. 28, 2019)........................................................................................................................ 24

*Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-04321-NKL, 2014 WL 1955107 (W.D. Mo. May 14, 2014)........................................................................................................ 27

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019)............ 23, 24, 25

*Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019)..................................................................... 22

*Chateau de Ville Prods., Inc. v. Tams-Witmark Music Libr., Inc.*, 586 F.2d 962 (2d Cir. 1978). 16

*Clair v. CVS Pharmacy, Inc.*, 222 F. Supp. 3d 779 (N.D. Cal. 2016)............................... 7, 10, 12

*Coleman v. Rite Aid of Georgia, Inc.*, 284 F. Supp. 3d 1343 (N.D. Ga. 2018).................... 7, 9, 10

*Davis v. D.R. Horton Inc.*, No. CV 19-1686-LPS-JLH, 2020 WL 6042091 (D. Del. Oct. 13, 2020)........................................................................................................................ 30

*Dennis v. Amerigroup Washington, Inc.*, No. 3:19-CV-05165-RBL, 2020 WL 618472 (W.D. Wash. Feb. 10, 2020)........................................................................... 5, 6, 8, 20

*Dorfman v. Albertsons, LLC*, No. 1:18-CV-00094-EJL, 2018 WL 9988655 (D. Idaho Oct. 18, 2018).................................................................................................................. passim

*Eldridge v. Cabela's Inc.* No. 3:16-CV-536-DJH, 2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)........................................................................................................................ 29

*Eliason v. Gentek Bldg. Prod., Inc.*, No. 1:10-cv-02093, 2011 WL 3704823 (N.D. Ohio Aug. 23, 2011)................................................................................................................... 15

*Faktor v. Lifestyle Lift*, No. 1:09-CV-511, 2009 WL 1565954 (N.D. Ohio June 3, 2009) .......... 15

*Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555 (M.D. Tenn. 2020) .......................... 13, 14

*Free v. Allstate Indem. Co.*, No. 9:20-CV-190, 2021 WL 2173168 (E.D. Tex. May 27, 2021) .. 26

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, 07-5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) .......... 25

*Gabertan v. Walmart, Inc.*, 523 F. Supp. 3d 1254 (W.D. Wash. 2021) .......................................... 8

*Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2015 WL 1286347 (S.D. Ohio Mar. 20, 2015) .......... 15, 25

*Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888 (E.D. Mich. 2012) ..................... 34

*Healey v. Jefferson Cnty. Ky. Louisville Metro Gov't.*, No. 3:17-cv-71-DJH, 2018 WL 1542142 (W.D. Ky Mar. 29, 2018) .......... 13

*Hossfeld v. Lifewatch, Inc.*, No. 1:13-CV-9305, 2021 WL 1422785 (N.D. Ill. Feb. 5, 2021) ..... 34

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) .......................................................... 13, 16

*In re Dynasty Mortg., LLC*, 22 F.C.C. Rcd. 9453 (May 14, 2007) ............................................. 33

*Jiminez v. Credit One Bank, N.A.*, No. 17 CV 2844-LTS-JLC, 2019 WL 1409425 (S.D.N.Y. Mar. 28, 2019) .......... 23

*Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) .................................. 21, 34

*Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162 (S.D. Ind. 1997) ........................................... 32

*Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) ......................................... 21, 34

*Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672 (7th Cir. 2009) ..................................................... 25

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ......................................................... 20

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ......................................... 32, 34

*Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499 (D.R.I. 2020) ..................................................... 7

*Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101 (11th Cir. 2015) ............................ 32

*Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) .......... 21, 27, 34

*Legrand v. Intellicorp Records, Inc.*, No. 1:15-cv-2091, 2016 WL 1161817 (N.D. Ohio Mar. 24, 2016) .......... 15

*Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020) .......... 4, 23

*Lindenbaum v. CVS Health Corp.*, No. 1:17-CV-1863, 2018 WL 501307 (N.D. Ohio Jan. 22, 2018) .......... 5, 7

*Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228 (C.D. Cal. 2018) .......... 30

*Marshall v. Grubhub Inc.*, No. 19-CV-3718, 2021 WL 4401496 (N.D. Ill. Sept. 27, 2021) .......... 30

*Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4698665 (N.D. Ill. Sept. 8, 2016) .......... 31

*McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810 (E.D. Ky. 2019) .......... 16

*McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) .......... 22, 30, 34

*Mendez v. The Radec Corp.*, 260 F.R.D. 38 (W.D.N.Y. 2009) .......... 26

*Meyer v. Receivables Performance Mgmt., LLC*, No. C12-2013RAJ, 2013 WL 1914392 (W.D. Wash. May 8, 2013) .......... 31

*Mod. Holdings, LLC v. Corning Inc.*, No. CIV. 13-405-GFVT, 2015 WL 1481459 (E.D. Ky. Mar. 31, 2015) .......... 14

*Morgan v. Orlando Health, Inc.*, No. 617CV1972ORL41GJK, 2019 WL 7423512 (M.D. Fla. Oct. 15, 2019) .......... 24

*Neo4j, Inc. v. PureThink, LLC*, No. 5:18-CV-07182-EJD, 2020 WL 4901619 (N.D. Cal. Aug. 20, 2020) .......... 3

*Newton v. S. Wood Piedmont Co.*, 163 F.R.D. 625 (S.D. Ga. 1995) .......... 26

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) .......... 4, 22

*Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2019 WL 1491694 (N.D. Cal. Apr. 4, 2019) .......... 23

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) .......... 14

*Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370 (D.C. Cir. 1980) .......... 26

*Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011) .......... 26

*Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV, 2018 WL 3145807 (S.D. Fla. June 26, 2018) .......... 21, 34

*Roark v. Credit One Bank, N.A.*, No. CV 16-173 (PAM/ECW), 2018 WL 5921652 (D. Minn. Nov. 13, 2018) .......... 24, 25

*Roberts v. Medco Health Sols., Inc.*, No. 4:15 CV 1368 CDP, 2016 WL 3997071 (E.D. Mo. July 26, 2016)....... 5, 9, 12

*Rodriguez v. Premier Bankcard, LLC*, No. 3:16CV2541, 2018 WL 4184742 (N.D. Ohio Aug. 31, 2018) ....... 29

*Sandoe v. Bos. Sci. Corp.*, No. CV 18-11826-NMG, 2020 WL 94064 (D. Mass. Jan. 8, 2020).. 24

*Schilling v. Kenton Cnty, Ky.*, No. 10-143-DLB, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011).... 13

*Sengenberger v. Credit Control Servs., Inc.*, No. 09C2796, 2010 WL 1791270 (N.D. Ill. May 5, 2010) ....... 33

*Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978)....... 16

*Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-CV-36, 2016 WL 25979 (S.D. Ohio Jan. 4, 2016)....... 14

*Smith v. Network Sols., Inc.*, 135 F. Supp. 2d 1159 (N.D. Ala. 2001)....... 26

*Smith v. Rite Aid Corp.*, No. 17-CV-6044 CJS, 2018 WL 5828693 (W.D.N.Y. Nov. 7, 2018) ....... 5, 7, 10

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) ....... 4, 22, 32

*Sullivan v. Stroop*, 496 U.S. 478 (1990) ....... 32

*Thornton v. Mercantile Stores Co.*, 13 F. Supp. 2d 1282 (M.D. Ala. 1998) ....... 26

*Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876 (8th Cir. 2005) ....... 23

*Watts v. Emergency Twenty Four, Inc.*, No. 20-CV-1820, 2021 WL 2529613 (N.D. Ill. June 21, 2021) ....... 6

*Wesley v. Snap Fin. LLC*, No. 2:20-CV-148-RJS-JCB, 2021 WL 4291275 (D. Utah Sept. 21, 2021) ....... 21, 34

*West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017)....... 21, 34

*Wood v. Capital Vision Servs. LLC*, No. 20 C 4584, 2021 WL 5280938 (N.D. Ill. Nov. 12, 2021)....... 17

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ....... 25, 27

**Regulations**

*In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015)....... 12

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9054 (2016) ........................................ 4, 5, 6

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 35 F.C.C. Rcd. 2840 (2020) ........................................ 9, 10

## Introduction

A1 Diabetes & Medical Supply, Inc. ("Defendant") moves under Rule 12(b)(6) to dismiss Tuwanna Carmouche's ("Plaintiff") claims against it, arguing that the artificial or prerecorded voice messages it delivered to Plaintiff' cellular telephone fall within the Telephone Consumer Protection Act's ("TCPA") "emergency purposes" exception. But because the artificial or prerecorded messages that Defendant delivered to Plaintiff's cellular telephone were intended for someone other than Plaintiff, they cannot fall within the TCPA's "emergency purposes" exception. No matter, even if the artificial or prerecorded messages that Defendant delivered to Plaintiff's cellular telephone, which were intended for someone other than Plaintiff, could fall within the TCPA's "emergency purposes" exception—they cannot—those that Defendant delivered to Plaintiff's cellular telephone after Plaintiff instructed Defendant not to do so cannot fall within the TCPA's "emergency purposes" exception. Defendant's motion to dismiss, therefore, fails.

Defendant also moves under Rule 12(f) to strike Plaintiff's class allegations, arguing that Plaintiff will not be able to satisfy Rule 23(b)(3)'s predominance requirement when class certification becomes an issue ripe for this court's consideration. But Defendant's facial attack on Plaintiff's proposed classes—which is distinct from the "rigorous analysis" this Court must conduct in the future in connection with a motion for class certification under Rule 23—is premature. That is, this Court simply cannot conclude at this stage that it will be "impossible" to certify Plaintiff's proposed classes, or that "under no set of circumstances" could common questions predominate. Defendant's motion to strike Plaintiff's class allegations, therefore, fails.

## Statement of Relevant Facts

Plaintiff is not, nor was, one of Defendant's customers or accountholders. ECF No. 1 at 5, ¶ 27. Plaintiff does not now, nor did she previously, have any business relationship with Defendant.

*Id.*, ¶ 28. Plaintiff did not provide her cellular telephone number to Defendant. *Id.*, ¶ 29. Plaintiff did not give Defendant prior express consent to deliver artificial or prerecorded voice messages to her cellular telephone. *Id.* at 6, ¶ 29. And, on March 13, 2014, Plaintiff registered her cellular telephone number on the National Do Not Call Registry. *Id.* at 2, ¶ 8.

No matter, sometime after August 2017 Defendant began placing calls and delivering artificial or prerecorded voice messages to Plaintiff's cellular telephone. *Id.*, ¶ 9. On occasions when Plaintiff did not answer Defendant's calls, Defendant delivered artificial or prerecorded voice messages to Plaintiff's cellular telephone, at least a dozen of which stated, in full:

> . . . to confirm your shipment. If it is more convenient, you may refill online at A1diabetes.com/refill. Again, please call us at 855-932-0599 to confirm your shipment. Or you may refill online at A1diabetes.com/refill. Thank you.

*Id.* at 4, ¶ 18.

On occasions when Plaintiff answered Defendant's calls, she informed Defendant that it reached a wrong number, and that it should stop placing calls and delivering messages to her cellular telephone. *Id.* at 2, ¶ 10. For example, on or around April 8, 2021, Plaintiff answered a call from Defendant, informed Defendant that she was not diabetic, informed Defendant that she previously requested on a number of occasions that Defendant stop placing calls to her cellular telephone, informed Defendant that it reached a wrong number, and instructed Defendant to stop placing calls to her cellular telephone. *Id.*, ¶ 11. In response, Defendant informed Plaintiff that it would call her back at another time, and ultimately terminated the call. *Id.* at 3, ¶ 12.

Similarly, on or around May 6, 2021, on or around June 14, 2021, and in mid-July 2021, Plaintiff answered calls from Defendant, informed Defendant that she was not diabetic, informed Defendant that she previously requested on a number of occasions that Defendant stop placing calls to her cellular telephone, informed Defendant that it reached a wrong number, and instructed

Defendant to stop placing calls to her cellular telephone. *Id.*, ¶¶ 13-15. In response, on each of these occasions, Defendant informed Plaintiff that it would remove her cellular telephone number from its dialing list. *Id.*, ¶ 16. Defendant, however, continued to place calls and deliver artificial or prerecorded voice messages to Plaintiff's cellular telephone. *Id.*, ¶ 17.

Moreover, sometime in March 2021, still receiving calls and artificial or prerecorded voice messages from Defendant, Plaintiff placed a call to Defendant, informed Defendant that she was not diabetic, informed Defendant that she previously requested on a number of occasions that Defendant stop placing calls to her cellular telephone, informed Defendant that it reached a wrong number, and instructed Defendant to stop placing calls to her cellular telephone. *Id.*, ¶ 22. Defendant, however, continued to place calls and deliver artificial or prerecorded voice messages to Plaintiff's cellular telephone. *Id.*, ¶ 23.[1]

## Argument

### I. This Court should deny Defendant's motion to dismiss Plaintiff claims.

#### A. Artificial or prerecorded voice messages that Defendant delivered to Plaintiff's cellular telephone, but which were intended for someone other than Plaintiff, do not fall within the TCPA's "emergency purposes" exception.

Regarding the TCPA's "emergency purposes" exception, the Federal Communications Commission ("FCC") stated:

> We emphasize that our finding will not promote the proliferation of unwanted robocalls from *any* third party to *any* person under the auspices of an emergency.

---

[1] Recordings that Defendant produced in connection with its Rule 26(a)(1) initial disclosures largely support Plaintiff's allegations regarding her statements to Defendant. *See, e.g.*, A1_Diabetes000011 (click here to listen to recording); A1_Diabetes000012 (click here to listen to recording); A1_Diabetes000014 (click here to listen to recording). And while these recordings are not necessary to Plaintiff' instant response, this Court may consider them. *See Neo4j, Inc. v. PureThink, LLC*, No. 5:18-CV-07182-EJD, 2020 WL 4901619, at *3 (N.D. Cal. Aug. 20, 2020) ("On both a motion to dismiss and a motion to strike, a court may consider the pleadings as well as documents that are attached to the pleadings, incorporated by reference when their authenticity is not contested, or are otherwise properly the subject to judicial notice.").

> First, purported emergency calls cannot be targeted to just any person. These calls must be about a *bona fide* emergency that is relevant to the called party. For example, calls about school closings, which we have already noted as a scenario that constitutes an emergency, would be relevant to parents or guardians of students or "other members of the school community."

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9054, 9062 n. 76 (2016) ("2016 Order").[2]

Significant, then, is that a "called party" under the TCPA is "the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012). The term "called party" does not mean "intended recipient," even where the caller reaches a wrong number. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) ("the term 'called party' does not mean 'intended recipient'"); *see also Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) (adopting the approach of the Seventh and Eleventh Circuits and noting that they "have . . . both rejected [the] 'intended recipient' interpretation" of a "called party" as defined by the TCPA); *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 694 (D.C. Cir. 2018) ("The Commission, though, determined that the term 'called party' refers not to 'the intended recipient of a call' but instead to 'the current subscriber' (*i.e.*, the current, nonconsenting holder of a reassigned number rather than a consenting party who previously held the number)").

Here, the artificial or prerecorded voice messages that Defendant delivered to Plaintiff's cellular telephone were intended for someone other than her. *See* ECF No. 1 at 2, 5-6, ¶¶ 10, 26-29. To be sure, and as Defendant acknowledges, the artificial or prerecorded voice messages that it delivered to Plaintiff's cellular telephone were intended for a "customer[] with whom [Defendant] has an established business relationship and who [is] being contacted to 'refill' and

---

[2] Unless otherwise stated, internal citations and quotations are omitted.

'reorder' [diabetes-related] supplies." ECF No. 19-1 at 2. But Plaintiff is not a diabetic, *see* ECF No. 1 at 2, ¶ 11, she is not, nor was, one of Defendant's customers or accountholders, *see id*. at 5, ¶ 26, and she does not, nor did, have any business relationship with Defendant. *See id*., ¶ 27.

Accordingly, the artificial or prerecorded voice messages that Defendant delivered to Plaintiff's cellular telephone were not, and simply could not have been, "about a *bona fide* emergency that is relevant to [her]." 2016 Order, 31 F.C.C. Rcd. at 9062 n.76. How could they be? They were messages intended to sell "diabetic testing supplies," ECF No. 19-1 at 2, 12, and Plaintiff is not diabetic, was not one of Defendant's customers or accountholders, and did not have any business relationship with Defendant. *See* ECF No. 1 at 2, 5, ¶¶ 11, 26-27. So because the FCC made clear that "purported emergency calls cannot be targeted to just any person," 2016 Order, 31 F.C.C. Rcd. at 9062 n.76, the artificial or prerecorded voice messages that Defendant delivered to Plaintiff's cellular telephone do not fall within the TCPA's "emergency purposes" exception.

Plaintiff recognizes that some courts have found that artificial or prerecorded voice messages directed to wrong or reassigned cellular telephone numbers can fall within the TCPA's "emergency purposes" exception, *see, e.g.*, *Roberts v. Medco Health Sols., Inc.*, No. 4:15 CV 1368 CDP, 2016 WL 3997071, at *1-3 (E.D. Mo. July 26, 2016); *Lindenbaum v. CVS Health Corp.*, No. 1:17-CV-1863, 2018 WL 501307, at *3 (N.D. Ohio Jan. 22, 2018), that other courts have indirectly suggested as much, *see, e.g.*, *Smith v. Rite Aid Corp.*, No. 17-CV-6044 CJS, 2018 WL 5828693, at *5 (W.D.N.Y. Nov. 7, 2018), and that other courts have called attention to but refused to weigh in on the issue. *See, e.g.*, *Dennis v. Amerigroup Washington, Inc.*, No. 3:19-CV-05165-RBL, 2020 WL 618472, at *6 (W.D. Wash. Feb. 10, 2020), *amended on denial of reconsideration,* No. 3:19-CV-05165-RBL, 2020 WL 996856 (W.D. Wash. Mar. 2, 2020).

Not one of these courts, however, provides an explanation as to how applying the TCPA's "emergency purposes" exception to wrong or reassigned number calls can be reconciled with the FCC's clear and unambiguous statement that calls to which the "emergency purposes" exception applies "must be about a *bona fide* emergency that is relevant to the called party." 2016 Order, 31 F.C.C. Rcd. at 9062 n. 76. And while the court in *Dennis* came closest to doing so—by referencing the FCC's statement that it "encourage[s] educational organizations to regularly update their emergency calling lists to ensure that emergency-purpose calls do in fact reach the parent or guardian of each affected student and are not received by consumers with no connection to the school," and correspondingly reasoning that "[t]his suggests that even wrong-number calls can qualify for the exemption," 2020 WL 618472, at *6—it does not clarify how the FCC's encouragement to educational organizations could override its explicit declaration that calls to which the "emergency purposes" exception applied "must be about a *bona fide* emergency that is relevant to the called party." 2016 Order, 31 F.C.C. Rcd. at 9062 n. 76.

**B. In any event, artificial or prerecorded voice messages that Defendant delivered to Plaintiff's cellular telephone, after Plaintiff informed Defendant not to do so, do not fall within the TCPA's "emergency purposes" exception.**

**1. The TCPA's "emergency purposes" exception does not apply to post cease-and-desist artificial or prerecorded voice messages.**

"[E]ven in cases where the ['emergency purpose' exception] may apply to the calls at the outset, it no longer applies once the recipient of the calls notifies the caller to stop." *Dorfman v. Albertsons, LLC*, No. 1:18-CV-00094-EJL, 2018 WL 9988655, at *4 (D. Idaho Oct. 18, 2018) (collecting cases); *see also Watts v. Emergency Twenty Four, Inc.*, No. 20-CV-1820, 2021 WL 2529613, at *5 n.2 (N.D. Ill. June 21, 2021) ("emergency purposes exception may not apply to certain types of calls made to Watts or other individuals who requested that EMERgency24 stop contacting them"); *Dennis*, 2020 WL 618472, at *6 ("[S]everal courts have held that prescription

notifications and similar healthcare-related calls cannot fall within the emergency exemption if the recipient had informed the caller that they did not wish to receive the calls."); *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 504 n.4 (D.R.I. 2020) ("The emergency exception does not apply where an entity calls an individual who has previously asked not to be contacted."); *Coleman v. Rite Aid of Georgia, Inc.*, 284 F. Supp. 3d 1343, 1346-47 (N.D. Ga. 2018) ("the emergency purposes exception to the TCPA does not apply to calls made after [the plaintiff] told Rite Aid to stop calling him"); *Clair v. CVS Pharmacy, Inc.*, 222 F. Supp. 3d 779, 780 (N.D. Cal. 2016) ("Continuing to call a customer (or former customer) about a prescription, when the customer has made clear that he does not want or need the calls, does not fall within the definition of an 'emergency' purpose."); *accord Lindenbaum*, 2018 WL 501307, at *2 (holding that the TCPA's "emergency purpose" exception applied to prescription notification calls because "[u]nlike in *St. Clair*, Plaintiff fails to allege any affirmative action she took to tell CVS that CVS was calling the wrong customer number."); *Smith v. Rite Aid Corp.*, No. 17-CV-6044 CJS, 2018 WL 5828693, at *5 (W.D.N.Y. Nov. 7, 2018) ("As Rite Aid correctly points out, some other district courts have found that the emergency purpose exception excludes prescription notice calls from TCPA liability, at least where the recipient never notifies the defendant pharmacy that the calls are unwelcome.").

And this makes sense, considering that "[t]he term emergency purposes means calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4). Because "[w]hen a customer (or former customer) has explicitly told a pharmacy that he does not want or need calls about a prescription, the continued calls can hardly be described as 'necessary,' much less involving a 'situation' affecting the customer's health and safety." *Clair*, 222 F. Supp. 3d at 780. Not surprising, then, is that examples the FCC provides in connection with its guidance regarding the scope of the "emergency purposes" exception "are nothing like the situation

presented in this case, namely, automated calls about prescriptions to people who have previously stated they do not wish to receive them." *See id*. at 780-81 (collecting examples).

**2. Defendant does not cite any authority that stands for the proposition that the TCPA's "emergency purposes" exception applies to artificial or prerecorded voice messages delivered after a cease-and-desist statement.**

Not one of the decisions Defendant cites suggest that the TCPA's "emergency purposes" exception applies to artificial or prerecorded voice messages that Defendant delivered to Plaintiff's cellular telephone after she informed Defendant that she was not diabetic, informed Defendant that it reached a wrong number, and instructed Defendant to stop placing calls to her cellular telephone.

To start, the court in *Gabertan v. Walmart, Inc.* said nothing of a TCPA defendant's liability for calls placed after a recipient informed it that she no longer wished to receive calls. *See generally* 523 F. Supp. 3d 1254 (W.D. Wash. 2021). And this is unremarkable given the court's statement that "[i]t is clear from the face of the pleading that the single, informational text message Walmart sent to Gabertan falls squarely within the TCPA's emergency exception[.]" *Id*. at 1261.

Similarly, the court in *Dennis* did not find that calls made after a recipient informed a caller that she no longer wished to receive its calls could nonetheless fall within the TCPA's "emergency purposes" exception. *See generally* 2020 WL 618472. This, too, is unexceptional as the court emphasized that the call in question "was the first call that Amerigroup placed to Dennis after he received his new phone, [and that as a result] Amerigroup is not at fault for calling a wrong number." *Id*. at *7.[3]

As well, the court in *Dorfman* did not suggest that a TCPA defendant's calls placed post-cease-and-desist statement could fall within the TCPA's "emergency purposes" exception. *See*

[3] Of note, the D.C. Circuit, in *ACA Int'l*, struck down the FCC's one-call safe harbor. *See* 885 F.3d at 706-09.

*generally* No. 1:18-CV-00094-DCN, 2020 WL 86192 (D. Idaho Jan. 7, 2020). Quite contrary, the court explained: "As the Court previously held, calls made to individuals who previously notified the caller that they do not want prescription notifications 'cannot be deemed to be either necessary or an emergency.'" *Id*. at *5.

Lastly, the court's decision in *Roberts* does not stand for the proposition that Defendant's calls and artificial or prerecorded voice messages to Plaintiff cellular telephone—even those that it placed and delivered after Plaintiff asked Defendant not to so do—fall within the TCPA's "emergency purposes" exception. *See generally* 2016 WL 3997071; *see also Coleman*, 284 F. Supp. 3d at 1346 ("The Court is not convinced, however, that the issue here is the same as the issue in *Roberts*. In *Roberts*, the plaintiff's number previously belonged to a customer of the defendant-company that placed the offending calls. It is unclear in *Roberts* whether the plaintiff ever informed the company that it was calling the wrong number, or asked for the calls to stop. Contrastingly, Coleman made Rite Aid aware that the calls were placed to the wrong person and regarded medication that was not his, yet Rite Aid continued calling.").

**3. The FCC's COVID-19-related declaratory ruling does not suggest that the TCPA's "emergency purposes" exception applies to artificial or prerecorded voice messages delivered after a recipient's cease-and-desist statement.**

The FCC's 2020 declaratory ruling regarding COVID-19 does not compel a finding that the TCPA's "emergency purposes" exception applies to artificial or prerecorded messages that Defendant delivered to Plaintiff after she informed Defendant that she was not diabetic, informed Defendant that it reached a wrong number, and instructed Defendant to stop placing calls to her cellular telephone. *See generally In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 35 F.C.C. Rcd. 2840 (2020) ("2020 Order"). In short, the 2020 Order states, in relevant part:

> On our own motion, we confirm that certain callers may lawfully make automated calls and send automated text messages to wireless telephone numbers when such calls are necessary to protect the health and safety of citizens pursuant to the TCPA's "emergency purposes" exception. In the *Blackboard-Edison Declaratory Ruling*, the Commission made clear that automated calls to wireless numbers made necessary by incidents of imminent danger including "health risks" affecting health and safety are made for an emergency purpose and do not require prior express consent to be lawful.
>
> We find that the current pandemic constitutes such an imminent health risk to the public. In determining whether a call relating to the COVID-19 pandemic qualifies as a call made for an emergency purpose, we look to the identity of the caller and content of the call. *First*, the caller must be from a hospital, or be a health care provider, state or local health official, or other government official as well as a person under the express direction of such an organization and acting on its behalf. *Second*, the content of the call must be solely informational, made necessary because of the COVID-19 outbreak, and directly related to the imminent health or safety risk arising out of the COVID-19 outbreak.

*Id.*, 35 F.C.C. Rcd. at 2841.

Important, therefore, is that nothing about Defendant's artificial or prerecorded voice messages to Plaintiff's cellular telephone were "made necessary because of the COVID-19 outbreak." *See id.*[4] And even if that were not the case—it is—the 2020 Order says absolutely nothing about artificial or prerecorded voice messages delivered after a recipient directs the caller to cease and desist delivery of its messages. *See generally id.* That is, nothing in the 2020 Order even remotely suggests that an artificial or prerecorded voice message delivered to a recipient, after she made clear that she did not wish to receive the message, falls within the TCPA's "emergency purposes" exception. *See generally id.*

Consequently, Defendant's conclusion that the 2020 Order makes decisions like *Clair*, *Smith*, and *Coleman*, "inapposite," ECF No. 19-1 at 14-15, is exaggerated. And Defendant's

---

[4] Defendant's messages do not reference COVID-19, vaccinations, or any treatments. Instead, the messages state, in relevant part: "Again, please call us at 855-932-0599 to confirm your shipment. Or you may refill online at A1diabetes.com/refill." *See supra* Statement of Relevant Facts.

related suggestion that the COVID-19 pandemic somehow provided it with an unlimited pass to deliver artificial or prerecorded voice messages unrelated to the pandemic to wrong numbers—even after being informed that its messages were directed to wrong numbers—lacks support.

**4. Artificial or prerecorded voice messages from a healthcare provider do not automatically fall within the TCPA's "emergency purposes" exception.**

Outside the context of the "emergency purposes" exception, the FCC created an exemption to liability under the TCPA for certain calls from health care providers, so long as those calls satisfy a list of strict criteria.[5] *See* Declaratory Ruling and Order ¶¶ 144–148, *In the Matter of Rules*

[5] The artificial or prerecorded voice messages at issue here do not fall within the TCPA's "health care providers" exception, because they do not meet the following required criteria:

> 1) voice calls and text messages must be sent, if at all, only to the wireless telephone number provided by the patient;
> 2) voice calls and text messages must state the name and contact information of the healthcare provider (for voice calls, these disclosures would need to be made at the beginning of the call);
> 3) voice calls and text messages are strictly limited to the purposes permitted in para. 146 above; must not include any telemarketing, solicitation, or advertising; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules;
> 4) voice calls and text messages must be concise, generally one minute or less in length for voice calls and 160 characters or less in length for text messages;
> 5) a healthcare provider may initiate only one message (whether by voice call or text message) per day, up to a maximum of three voice calls or text messages combined per week from a specific healthcare provider;
> 6) a healthcare provider must offer recipients within each message an easy means to opt out of future such messages, voice calls that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the call recipient to make an opt-out request prior to terminating the call, voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future healthcare calls, text messages must inform recipients of the ability to opt out by replying "STOP," which will be the exclusive means by which consumers may opt out of such messages; and,
> 7) a healthcare provider must honor the opt-out requests immediately.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8031-32 (2015).

*& Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8030-32 (2015) ("2015 Order"). Included among the types of calls that fall within this exemption are "prescription notifications." *See id*. Therefore, it stands to reason that "[i]f . . . prescription notifications fell as a blanket matter within the statutory emergency purposes exemption, there would have been no need for the FCC to create this additional exemption." *Clair*, 222 F. Supp. 3d at 781. Stated otherwise, that the exemption for certain calls from health care providers exists, means that calls regarding prescription or medical equipment refills do not automatically fall with the TCPA's "emergency purposes" exception, as Defendant contents they do.

As the *Dorfman* court explained under a heading titled "Prescription-Related Calls Do Not Automatically Fall within the Emergency-Purposes Exception to TCPA Liability":

> Defendant argues that the *ACA International* decision unequivocally holds that prescription-related calls fall under the emergency-purposes exception to TCPA liability and thus are not actionable as a matter of law. . . .The Court has reviewed the *ACA International* decision closely and does not reach this same conclusion.
>
> * * *
>
> Moreover, the entire structure of the regulatory exemption is inconsistent with Defendant's argument.
>
> * * *
>
> If [all prescription notification] calls are, by definition, calls made for "emergency purposes," there would be no need to provide a specific regulatory exemption applicable to them or otherwise condition their qualification for the exemption.

2018 WL 9988655, at *2-4

At bottom, Defendant's suggestion that the artificial or prerecorded voice messages that it delivered to Plaintiff's cellular telephone were made for emergency purposes simply because Defendant is a self-described healthcare provider, *see* ECF No. 19-1 at 12, lacks merit. *Accord Clair*, 222 F. Supp. 3d 779 at 781 ("Assuming, for argument's sake only, that *Roberts* was correctly

decided, it does not stand for the proposition that all prescription-related calls are categorically made for emergency purposes.").[6]

**II. This Court should deny Defendant's motion to strike Plaintiff's class allegations.**

**A. A court should strike class allegations only where it is convinced that "under no set of circumstances" could it certify the proposed class, regardless of what discovery may ultimately show.**

The Sixth Circuit made clear that a court should "defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996). And only where a court is "convinced that . . . under no set of circumstances could the claim[s] succeed in class action form," should it strike class allegations. *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 576 (M.D. Tenn. 2020).

Accordingly, a party moving to strike class allegations "has the burden of demonstrating from the face of the . . . complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove." *Schilling v. Kenton Cnty, Ky.*, No. 10-143-DLB, 2011 WL 293759, at *4 (E.D. Ky. Jan. 27, 2011); *see also Healey v. Jefferson Cnty. Ky. Louisville Metro Gov't.*, No. 3:17-cv-71-DJH, 2018 WL 1542142, at *3 (W.D. Ky Mar. 29, 2018) (noting that "Defendants fail to show that it would be impossible to certify the Plaintiffs' proposed class as currently defined," and denying the defendants' motion to strike class allegations).

Unexceptional, then, is that "[alt]hough procedurally permissible, striking a plaintiff's class allegations prior to discovery and a motion for class certification is a rare remedy." *Mod. Holdings, LLC v. Corning Inc.*, No. CIV. 13-405-GFVT, 2015 WL 1481459, at *2 (E.D. Ky. Mar.

---

[6] That Defendant characterizes itself as a healthcare provider is not meaningless. The FCC provided healthcare providers an avenue to deliver artificial or prerecorded voice messages that are exempt from the TCPA's reach. *See supra* at n.4. Defendant, however, elected not to take advantage of such protection. *See id.* It should not, therefore, be permitted to benefit from of a similar protection by way of the backdoor it now seeks to walk through.

31, 2015) (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974), and collecting cases). And despite Defendant's insinuation otherwise, the Sixth Circuit's opinion in *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) did not alter the consensus that motions to strike class allegations are disfavored:

> Before *Pilgrim*, courts disfavored striking class allegations prior to a motion to certify. *See, e.g.*, *Faktor v. Lifestyle Lift*, No. 1:09-CV-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009) ("A motion to strike class allegations is not a substitute for class determination and should not be used in the same way."). After *Pilgrim*, courts still disfavor the practice. *See, e.g.*, *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2015 WL 1286347, at *17 (S.D. Ohio Mar. 20, 2015) ("Without further insight into the facts, the Court lacks the foundation to conduct the 'rigorous analysis' required by Rule 23 and determine the appropriateness of class certification"). This reticence makes sense: typically a court lacks the necessary facts at the pleading stage to determine whether a class-action is proper. This is why striking class allegations before the class-discovery stage is disfavored, and courts generally defer the decision until after class discovery. *See Mazzola v. Roomster Corp.*, 849 F. Supp 2d. 395, 410 (S.D.N.Y. 2012) (motion to strike "disfavored" because it "preemptively terminate[s] the class aspects of . . . litigation.").

*Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-CV-36, 2016 WL 25979, at *2 (S.D. Ohio Jan. 4, 2016); *accord Fishon*, 501 F. Supp. 3d at 576 (pointing out the unique circumstances that were at issue in *Pilgrim*—that "each class member's claim would be governed by the law of the State in which he made the challenged purchase, and the differences between the consumer-protection laws of the many affected States would cast a long shadow over any common issues of fact plaintiffs might establish"—noting that these unique circumstances "formed the basis for striking class allegations" in *Pilgrim*, and denying the defendant's motion to strike class allegations).

### B. It is premature for this Court to decide whether Plaintiff can satisfy Rule 23(b)(3)'s predominance requirement based solely on the pleadings.

"Motions to strike class allegations are a facial attack on a proposed class." *Sherrod*, 2016 WL 25979, at *2. "This procedural posture is distinct from that of a motion to certify a class where

the Court has at its disposal the facts generated by class discovery." *Id*. Important, then, is that "[a] motion to strike class allegations is not a substitute for class determination and should not be used in the same way." *Faktor v. Lifestyle Lift*, No. 1:09-CV-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009); *see also Eliason v. Gentek Bldg. Prod., Inc.*, No. 1:10-cv-02093, 2011 WL 3704823, at *3 (N.D. Ohio Aug. 23, 2011) (same).

Defendant, however, attempts to do just that. Namely, despite acknowledging that it moves to strike Plaintiff's class allegations under Rule 12(f), *see* ECF No. 19-1 at 6 n.5, Defendant's argument in support of its motion to strike Plaintiff's class allegations is focused on the suggestion that Plaintiff will not, when the time comes, be able to satisfy Rule 23(b)(3)'s predominance requirement. *See* ECF No. 19-1 at 16-22. More specifically, Defendant argues that "Plaintiff cannot meet the predominance requirement under Rule 23(b)(3)" because the applicability of Defendant's "emergency purposes" exception to proposed class members "requires individualized determinations for each class member," and since "reliance on consent from a prior owner of a phone number is an individual issue not appropriate for class certification." *Id*. at 16.

But "[w]ithout further insight into the facts, th[is] Court lacks the foundation to conduct the 'rigorous analysis' required by Rule 23 and determine the appropriateness of class certification," and more specifically, whether Plaintiff will be able to satisfy Rule 23(b)(3)'s predominance requirement. *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2015 WL 1286347, at *17 (S.D. Ohio Mar. 20, 2015); *see also Legrand v. Intellicorp Records, Inc.*, No. 1:15-cv-2091, 2016 WL 1161817, at *4 (N.D. Ohio Mar. 24, 2016) (finding that, at the pleading stage, the court could not conclude as a matter of law that individual issues would predominate over common issues, and concluding "[a]s is generally the case, this balance can be better evaluated after discovery."); *Allen v. Andersen Windows, Inc.,* 913 F. Supp. 2d 490, 516 (S.D.

Ohio 2012) (declining to strike class allegations at the pleading stage, and deeming it prudent to evaluate the plaintiff's putative class after class certification briefing).

And this is because the facts necessary for this Court to conduct the required rigorous analysis here are currently unavailable, due, in large part, to this Court's order "stay[ing] [] class discovery pending this Court's Order on Defendant's Motion to Dismiss and/or Strike Class Allegations with Prejudice." *See* ECF No. 22; *accord Chateau de Ville Prods., Inc. v. Tams-Witmark Music Libr., Inc.*, 586 F.2d 962, 966 (2d Cir. 1978) ("Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is held.").

So, without more, "at this stage in the litigation, before any limited discovery, it is premature to decide the class certification issue," including whether Plaintiff will be able to satisfy Rule 23(b)(3)'s predominance requirement. *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 823 (E.D. Ky. 2019); *see also In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 ("[O]rdinarily the determination should be predicated on more information than the pleadings will provide."); *Weathers*, 499 F.2d at 1200 (a plaintiff should "be afforded an opportunity to present evidence on the maintainability of the class action"); *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1313 (4th Cir. 1978) ("discovery is to be encouraged" on class certification issues).

Also quite pertinent, in rejecting a defendant's request that "class allegations be stricken because determining the application of certain health care exceptions to the TCPA and other issues of consent would predominate over the common issues of law or fact," the court in *Wood v. Capital Vision Servs. LLC* wrote, just weeks ago:

> Defendants have not identified any authority that supports striking class allegations where the existence of exceptions to TCPA liability might attach and have further

> not identified how many—*if any*—individuals might fall within these exceptions. This is precisely the type of question that may be addressed more fully during class discovery. At this stage, with no information about the applicability of these exceptions to the putative class, it would be premature and speculative to strike the allegations.
>
> *   *   *
>
> Defendants argue that the Healthcare Treatment Exemption and "emergency purposes" exception to the TCPA require individualized inquiries that preclude class treatment. . . . Defendants identify specific evidence that might be required including whether Defendants' message was covered, whether the potential class member provided their phone number to Defendants, whether the Defendants stated its contact information, whether the message was specifically concise, and whether the Defendants provided an opt-out mechanism. . . . These questions may rise to the level of a fact-specific inquiry that precludes certification, but at present are merely speculative as to the amount of evidence that will be required to determine class membership. However, Defendants have not presented any specific evidence that these issues of individualized consent will predominate.
>
> *   *   *
>
> Without "specific evidence—as opposed to mere speculation—that [a] purportedly individualized issue predominates over common issues," the court cannot conclude that individualized factual questions predominate at this stage. *See, e.g., Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 850 (N.D. Ill. 2021). Accordingly, the Court denies Defendants' motion to strike the class allegations based on predominance.

No. 20 C 4584, 2021 WL 5280938, at *3, 4 (N.D. Ill. Nov. 12, 2021).

Here, like in *Wood*, Defendant presents no specific evidence regarding the applicability of the TCPA's "emergency purposes" exception to even one of Plaintiff's proposed class members. *See generally* ECF No. 19-1. And this is to be expected, as, again, discovery in this matter has not yet commenced. *See* ECF No. 22. Defendant's motion to strike Plaintiff's class allegations is, therefore, premature.

Notwithstanding, both of Defendant's predominance-specific contentions are doomed to fail, if and when Defendant raises them at the appropriate time.

**1. This Court will not have to make individualized inquiries regarding the artificial or prerecorded voice messages at issue to determine if they fall within the TCPA's "emergency purposes" exception.**

Defendant argues that "the application of the ["emergency purposes"] exception . . . defeats Plaintiff's ability to certify a class." ECF No 19-1 at 18. In support of its contention, Defendant cites a single decision. *See* ECF No. 19-1 at 18-19 (citing *Dorfman*, 2020 WL 86192, at *4). In doing so, however, Defendant fails to call attention to the specific class definitions at issue in *Dorfman,* which differ materially from the class definitions that Plaintiff proposes here, and therefore make *Dorfman* inapposite to this matter.

To start, the court in *Dorfman* explained that because it "would need to make individualized inquiries into the circumstances and content of wrong number calls that class members received to determine if the messages fell within a TCPA exception," the following proposed class was "not susceptible to generalized, class-wide proof":

> All natural persons within the United States who, within the four years prior to the filing of the original Complaint in this matter, Defendant called or caused to be called, through the use an artificial or prerecorded voice, *where such person was not listed in Defendant's records as the intended recipient of the call(s).*

*Id*. at *3 (emphasis added).[7]

And while Plaintiff disagrees with the court's reasoning, she understands it. That is, because the plaintiff in *Dorfman* defined his proposed classes as "person[s] not listed in Defendant's records as the intended recipient of the calls(s)," the court found that "class members would need to present evidence that varies from member to member[.]" *Id.* at *4. In other words, as it appears the court's reasoning goes, the simple fact that a person was not listed in Defendant's

---

[7] Each of the plaintiff's three proposed class definitions in *Dorfman* included the qualification that proposed class members were persons "not listed in Defendant's records as the intended recipient of the calls." *Id*. at *3-4.

records as the intended recipient of a call does not mean that the defendant's calls to that person were not to subject to a TCPA exception, such as the "emergency purposes" exception. *Accord Dorfman*, No. 1:18-CV-00094-DCN, ECF No. 26-1 (Defendant's Motion to Deny Class Certification Pursuant to Rule 23(c)(1)) at 8, 24 (arguing against class certification because the terms by which the plaintiff defined his proposed classes "require a subjective assessment," and "necessarily invite subjective evaluations").

But here, Plaintiff defines her proposed classes as:

> A. All persons and entities throughout the United States (1) to whom A1 Diabetes & Medical Supply, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to an A1 Diabetes & Medical Supply, Inc. customer, (2) by using an artificial or prerecorded voice, (3) from four years preceding the date of this class action complaint through the date of class certification.
>
> B. All persons and entities throughout the United States (1) to whom A1 Diabetes & Medical Supply, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, (2) by using an artificial or prerecorded voice, (3) after the called party informed A1 Diabetes & Medical Supply, Inc. that the telephone number it called was a wrong or reassigned telephone number, or instructed A1 Diabetes & Medical Supply, Inc. to stop placing calls to the telephone number, (4) from four years preceding the date of this class action complaint through the date of class certification.

ECF No. 1 at 6-7, ¶ 36.

And this is significant because, given Plaintiff's proposed class definitions, this Court's ultimate decision as to whether the TCPA's "emergency purposes" exception is a viable defense will apply to all members of Plaintiff's proposed classes absent any individualized inquiry. To be sure, if, for example, after certifying Plaintiff's first proposed class, this Court finds that the "emergency purposes" exception applies to "wrong number" artificial or prerecorded voice messages like those Plaintiff received from Defendant—it should not, *see supra* Argument § I.A—the claims of each member of Plaintiff's first proposed class who received such artificial or

prerecorded voice messages will fail, absent the need to conduct any individualized inquiry. Similarly, if, after certifying Plaintiff's second proposed class for example, this Court finds that the "emergency purposes" exception applies to the "wrong number" calls at issue even after a called party informed Defendant to stop placing calls to him or her—it should not, *see supra* Argument § I.B—the claims of each member of Plaintiff's second proposed class will fail, absent the need to conduct any individualized inquiry.

So unlike in *Dorfman*—because of the manner in which Plaintiff defines her proposed classes—this Court would not need to "make individualized inquiries into the circumstances and content of wrong number calls that class members received to determine if the messages fell within a TCPA exception." 2020 WL 86192, at *4. Rather, this Court's ultimate decision as to whether, and under what circumstances, the TCPA's "emergency purposes" exception is a defense to Plaintiff's claims, will apply to the proposed class members' claims in a general and class-wide manner. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (noting that "common questions at the heart of this class's suit against Walgreens include . . . whether, as a matter of law, prescription reminder calls fall under the TCPA's emergency purpose exception; and if not, whether, as a matter of fact, Walgreens placed prerecorded or automated prescription refill reminder calls to those cellular phones. These common questions are the main questions in this case, and they predominate over individual issues that might also exist."); *accord Dennis*, No. 3:19-CV-05165-JLR, 2020 WL 6701328, at *1 (W.D. Wash. Nov. 13, 2020) (certifying a settlement TCPA class after disposing of the defendant's "emergency purposes" exception defense on summary judgment).

Moreover, to the extent Defendant suggests that *Dorfman* stands for the proposition that no "wrong number" TCPA class can be certified because of consent-related issues, Defendant—

and *Dorfman*, should it be read to state as much—is just plain wrong. *See, e.g.*, *Wesley v. Snap Fin. LLC*, No. 2:20-CV-148-RJS-JCB, 2021 WL 4291275, at *15 (D. Utah Sept. 21, 2021) (certifying a "wrong number" TCPA class over objection, and stating: "Snap argues, the issue of consent will require individualized proof that will predominate over the common issues in this case. The court disagrees."); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 242 (D. Ariz. 2019) (certifying a "wrong number" TCPA class over objection, and stating: "Likewise, whether consent was or was not given is a common question applicable to the class."); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV, 2018 WL 3145807, at *16 (S.D. Fla. June 26, 2018) (certifying a "wrong number" TCPA class over objection, and rejecting the defendant's argument that consent-related issues defeat predominance); *Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457, at *8 (D.N.M. June 5, 2018) (certifying a "wrong number" TCPA class over objection, and rejecting the defendant's argument that "this litigation will devolve into individualized issues of consent"); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (certifying a "wrong number" TCPA class over objection, and rejecting the defendant's argument that consent-related issues preclude certification); *Johnson v. Navient Solutions, Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (certifying a "wrong number" TCPA class over objection, and rejecting the defendant's argument that "the individual claims of proposed class members will reveal so many differences in the facts pertaining to each of the class members as to disqualify a class action as the superior means to resolve the dispute"); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (certifying a "wrong number" TCPA class over objection, and agreeing that "the issues surrounding consent are subject to common proof"); *accord McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept.

6, 2017) (certifying two "non-debtor" TCPA classes over objection, and rejecting the defendant's argument "that individualized issues regarding consent will predominate").

**2. Defendant's suggested "reasonable reliance" defense cannot preclude a finding that Plaintiff may be able to satisfy Rule 23(b)(3)'s predominance requirement.**

Defendant argues that because the court in *ACA Int'l* vacated the FCC's "one-call safe harbor," a court "must now consider in assessing TCPA liability in the context of a reassigned number whether the caller's reliance on the prior subscriber's consent [is] reasonable." ECF No. 19-1 at 19-20. In turn, Defendant reasons that "[t]o determine the reasonableness of reliance in this case, the Court would need to consider the unique facts and circumstances surrounding each reassigned number . . . to determine whether [Defendant] properly relied on a past subscriber's consent." *Id*. at 21. The very premise of Defendant's argument, however, is wrong.

To start, TCPA is "essentially a strict liability statute." *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540, 543 (6th Cir. 2014); *see also Breda v. Cellco P'ship*, 934 F.3d 1, 5 (1st Cir. 2019) ("The TCPA is a strict liability statute[.]"); *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) ("The TCPA is essentially a strict liability statute[.]"). It does not include a "reasonable reliance" defense. *See generally* 47 U.S.C. § 227. And every circuit court of appeals to consider the issue has stated as much:

> When a caller who is otherwise subject to the TCPA phones someone who has not consented to its calls, can the caller avoid liability under the TCPA's ATDS prohibitions if the person it *intended* to call had consented to the calls? We have never answered this question. But the Seventh and Eleventh Circuits have, and they both rejected Credit One's same "intended recipient" interpretation. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251–52 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 639–43 (7th Cir. 2012). The D.C. and Third Circuits have also voiced support for the Seventh and Eleventh Circuits' positions. *See ACA Int'l v. FCC*, 885 F.3d 687, 706 (D.C. Cir. 2018); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325 & n.13 (3d Cir. 2015). Reviewing the district court's jury instructions de novo for legal error, *Navellier v. Sletten*, 262 F.3d 923, 944 (9th Cir. 2001), we agree with our sister circuits. Credit One's intent to call a customer

> who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent.

*N. L. by Lemos*, 960 F.3d at 1167; *see also Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 882 n.3 (8th Cir. 2005) ("The [TCPA] . . . makes no exception for senders who mistakenly believe that recipients' permission or invitation existed."); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 979 (N.D. Cal. 2019) ("The circuit courts that have considered whether intent is relevant to TCPA liability have all concluded that good faith error or mistake does not preclude a defendant's liability[.] . . . Thus, defendants' contention that it maintained a good faith belief that it had consent to call Berman is not dispositive on the TCPA claims.").

Furthermore, and consistent with uniform circuit court precedent, multiple district courts have rejected the argument that Defendant now raises, which is that *ACA Int'l* mandated a "reasonable reliance" defense. *See, e.g.*, *Jiminez v. Credit One Bank, N.A.*, No. 17 CV 2844-LTS-JLC, 2019 WL 1409425, at *6-7 (S.D.N.Y. Mar. 28, 2019) ("Thus, there is no reasonable basis for reliance on the original holder's consent as indicative of consent by the new user. . . . Accordingly, the Court declines Defendants' invitation to recognize a reasonable reliance exception or defense that is inconsistent with the plain language of the statute."); *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2019 WL 1491694, at *7 (N.D. Cal. Apr. 4, 2019) ("Additionally, the FCC characterized the court's decision in *ACA International* as favorably describing the then-proposed safe harbor for callers that check the database as 'consistent with the Commission's past practice of taking a reasonable reliance approach *when interpreting* the TCPA,' . . . further undermining that 'reasonable reliance' represents a 'standard' for dealing with reassigned numbers following *ACA International*.").

Relatedly, Plaintiff acknowledges the existence of a small number of decisions like *Roark v. Credit One Bank, N.A.*, No. CV 16-173 (PAM/ECW), 2018 WL 5921652 (D. Minn. Nov. 13, 2018), but notes that courts have not hesitated to reject their underlying reasoning. *See Berman*, 400 F. Supp. at 981 n.14 (characterizing *Roark* as "unpersuasive"); *Morgan v. Orlando Health, Inc.*, No. 617CV1972ORL41GJK, 2019 WL 7423512, at *3 (M.D. Fla. Oct. 15, 2019) ("Defendants' reliance on *Roark v. Credit One Bank, N.A.*, CV 16-173 (PAM/ECW), 2018 WL 5921652, (D. Minn. Nov. 13, 2018), is unavailing. . . . Also, *Roark* simply concludes—without citation or discussion—that it must 'consider the reasonableness of the caller's reliance on a prior number holder's express consent.' Respectfully, based on the above discussion, this Court disagrees."). Also of note, two decisions Defendant cites, which rely on *Roark*, do so in less than an emphatic manner. *See, e.g.*, *Sandoe v. Bos. Sci. Corp.*, No. CV 18-11826-NMG, 2020 WL 94064, at *4 (D. Mass. Jan. 8, 2020) (relying on *Roark*, yet acknowledging that "[t]he First Circuit Court of Appeals has not addressed this issue," and noting that it identified no circuit court authority supporting *Roark*); *AMP Automotive, LLC v. BFT, LP*, No. 17-5667, 2019 WL 1409769, at *3 (E.D. La. Mar. 28, 2019) (leaving the issue of "reasonable reliance" to the jury).

In any event, this Court has no reason to address Defendant's suggested "reasonable reliance" argument now, as Defendant neither moved to dismiss Plaintiff's class action complaint based on a defense sounding in reasonable reliance, nor asserted a defense sounding in reasonable reliance by way of an answer and affirmative defense to Plaintiff's complaint. And even if Defendant had done so—it did not—Defendant fails to point to even a single proposed class member to whose cellular telephone number Defendant delivered an artificial or prerecorded voice message purportedly based on its "reliance on the prior subscriber's consent." ECF No. 19-1 at 20. That is, the entirety of Defendant's argument that "the proposed class implicates the highly

individualized issue of whether [Defendant] reasonably relied on consent obtained from a prior owner of the allege wrong or reassigned number," ECF No. 19-1 at 20 is hypothetical. And hypothetical concerns do not defeat class certification. *See Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 680 (7th Cir. 2009); *see also G.M. Sign, Inc. v. Finish Thompson, Inc.*, 07-5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009) (a defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals" on a list of potential class members may not be part of the class); *accord Berman*, 400 F. Supp. 3d at 981 n.14 (stating that *Roark* is "inapposite because [it] concern[s] consent to call phone numbers where the defendant confirmed consent of the original holder of a phone number which subsequently was reassigned. No such evidence has been offered here.").

Of course, this only further highlights the premature nature of Defendant's motion to strike Plaintiff's class allegations. Simply, given that Defendant has not filed an answer to Plaintiff's class action complaint, and that discovery in this matter has not yet opened, any predominance-related argument sounding in a purported "reasonable reliance" defense—which, notably, Defendant did not base, and could not have based, on specific allegations included in Plaintiff's class action complaint—is necessarily hypothetical at this stage. And this is a prototypical example of why courts "deem[] it prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage." *Geary*, 2015 WL 1286347, at *17.

## III. Plaintiff's proposed classes are not "fail-safe."

A fail-safe class is one that "cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). Stated otherwise, it is one where "[e]ither the class members win or, by virtue of losing, they are not in the class and,

therefore, not bound by the judgment." *Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir. 2011).

Here, Plaintiff's proposed classes are not fail-safe. Indeed, if this Court finds, after certifying Plaintiff's first proposed class and on summary judgment, for example, that the "emergency purposes" exception applies to every "wrong number" call at issue, the claims of each member of Plaintiff's first proposed class will fail, but the class members will remain in the class. That is, if Defendant succeeds in convincing this Court of its general "emergency purposes" exception defense on summary judgment and after Plaintiff's first proposed class is certified, *res judicata* will bar members of Plaintiff's first proposed class from re-litigating their claims.[8]

[8] That Defendant filed an early dispositive motion directed to the merits of Plaintiff's claims, *see* ECF No. 19-1 at 5-6, 16, thereby forcing this Court to rule on Defendant's "emergency purposes" exception argument prior to any class being certified in this matter, and accordingly waiving any one-way intervention-related protection that Defendant had, *accord Mendez v. The Radec Corp*., 260 F.R.D. 38, 45 (W.D.N.Y. 2009) ("a defendant can waive any objection to a decision on the merits prior to, or simultaneous with, a decision on class certification"), does not serve to somehow make Plaintiff's proposed classes "fail safe." Because any rationale designed to protect a defendant from future claims by class members "disappears when the defendant himself moves for summary judgment before a decision on class certification. In such a situation, the defendants . . . assume the risk that a judgment in their favor will not protect them from subsequent suits by other potential class members[.]" *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1382-83 (D.C. Cir. 1980); *accord Free v. Allstate Indem. Co*., No. 9:20-CV-190, 2021 WL 2173168, at *3 (E.D. Tex. May 27, 2021) ("One-way intervention is most commonly discussed when a plaintiff files a motion for summary judgment or another motion on the merits before filing a motion for class certification."); *Smith v. Network Sols., Inc.*, 135 F. Supp. 2d 1159, 1165 (N.D. Ala. 2001) ("When a defendant moves for summary judgment prior to class certification, the defendant is assuming the risk of stare decisis protection rather than the protection of res judicata[.]"), *aff'd sub nom. Smith v. Network Sols.*, 29 F. App'x 575 (11th Cir. 2001); *Thornton v. Mercantile Stores Co*., 13 F. Supp. 2d 1282, 1290 (M.D. Ala. 1998) ("Where the defendant seeks summary judgment knowing of the possibility that other plaintiffs will enter the case and not be bound thereby, it is not for the plaintiffs or the court to deter them from assuming that risk."); *Newton v. S. Wood Piedmont Co.*, 163 F.R.D. 625, 629-30 (S.D. Ga. 1995), *aff'd,* 95 F.3d 59 (11th Cir. 1996) ("When presented with dispositive motions during or prior to class certification proceedings, federal courts are faced with the potential problem of 'one-way intervention.'"). Simply put, "numerous courts have extended the [waiver] exception beyond the purely consensual situation . . . to include instances where defendants implicitly waive the protections of the rule against one-way intervention by attempting to obtain a favorable decision on the merits." *Barfield*

Likewise, if this Court finds, after certifying Plaintiff's second proposed class and on summary judgment, for example, that the "emergency purposes" exception applies to the "wrong number" calls at issue even after a called party informed Defendant to stop placing calls to him or her, the claims of each member of Plaintiff's second proposed class will fail, but the class members will remain in the class. So, again, if Defendant succeeds in convincing this Court of its post-cease and desist "emergency purposes" exception defense on summary judgment and after Plaintiff's second proposed class is certified, *res judicata* will bar members of Plaintiff's second proposed class from re-litigating their claims.

No construction of Plaintiff's proposed class definitions, therefore, will allow members of Plaintiff's proposed classes to seek a remedy but not be bound by an adverse judgment. *Accord Young*, 693 F.3d at 538. And Defendant's citations to decisions finding classes defined by reference to members who "did not provide consent," *see* ECF No. 19-1 at 23, are irrelevant, as nowhere in her proposed class definitions does Plaintiff include the requirement that proposed class members did not provide prior express consent to be called. *See* ECF No. 1 at 6-7, ¶ 36.[9]

---

*v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-04321-NKL, 2014 WL 1955107, at *2 (W.D. Mo. May 14, 2014); *accord Ahne v. Allis-Chalmers Corp.*, 102 F.R.D. 147, 151 (E.D. Wis. 1984) ("the courts have carved out a limited exception for those defendants willing to forego the protections attendant on early determination of the class issue").

[9] Noteworthy, in certifying a wrong number class under the TCPA the court in *Lavigne* wrote:

> To make the class definition clear to potential class members, the Court modifies the class definition as follows:
>
> > All persons who, since November 11, 2012, (1) called First National Bank Texas and First Community Bancshares, Inc., through their vendor GC services, and such call was coded "Bad/Wrong Number" and (2) were subsequently called again by First National Bank Texas and First Community Bancshares, Inc., on their cellular telephones through their vendor GC Services with an automatic telephone dialing system and such

**IV. Plaintiff's second proposed class is not duplicative of Plaintiff's first proposed class.**

Defendant states that Plaintiff's second proposed class "should be stricken because it is duplicative of" Plaintiff's first proposed class. ECF No. 19-1 at 26. Clear from the face of Plaintiff's proposed class definitions, however, is that they are not duplicative. In a nutshell, Plaintiff's first proposed class definition includes non-customers of Defendant to whose cellular telephones Defendant delivered an artificial or prerecorded voice message. *See* ECF No. 1 at 6-7, ¶ 36. Plaintiff's second proposed class definition includes non-customers of Defendant to whose cellular telephones Defendant delivered an artificial or prerecorded voice message *after* the non-customers instructed Defendant to stop placing calls to their cellular telephones. *See id*.

And this distinction matters, given the particular type of voice messages that are now at issue—purportedly healthcare-related—and the "emergency purposes" exception defense that Defendant contends it will raise. *See* ECF No. 19-1 at 9-16. To be certain, should this Court find that the TCPA's "emergency purposes" exception applies to artificial or prerecorded voice messages that Defendant delivered to "wrong numbers"—it should not, *see supra* Argument § I.A—but that the TCPA's "emergency purposes" exception does not apply to artificial or prerecorded voice messages that Defendant delivered to "wrong numbers" after recipients of the messages asked Defendant to stop delivering them—it should, *see supra* Argument § I.B—the distinction between Plaintiff's two proposed class definitions means that Defendant would be liable for artificial or prerecorded voice messages that it delivered to Plaintiff's second proposed

---

> > call was again coded as "Bad/Wrong Number." **Excluded are customers of First National Bank Texas or First Community Bancshares, Inc.**
>
> (modification in bold). This modification does not create an improper "fail-safe" class.

2018 WL 2694457, at *9.

class, but not for artificial or prerecorded voice messages that it delivered to Plaintiff's first proposed class. Such a distinction is therefore material, and far from "superfluous," as Defendant contends. *See* ECF No. 19-1 at 25.

The distinction between Plaintiff's two proposed class definitions, and its resulting potential effect, also brings this matter outside the reach of the court's opinion in *Eldridge v. Cabela's Inc.* No. 3:16-CV-536-DJH, 2017 WL 4364205 (W.D. Ky. Sept. 29, 2017). There, the court found two proposed TCPA classes to be "duplicative" because the defendant "would be equally liable to those who have passively not consented to receive calls and to those who have taken affirmative steps to inform [the defendant] they do not wish to receive calls." *Id.* at *10.[10] That, however, simply is not the case here. Because unlike in *Eldridge*—at least according to the court's reasoning there—Plaintiff's proposed classes are not "redundant" in either text or effect. *See id*.

## V. Defendant's contention that Plaintiff cannot certify a class under Rule 23(b)(2) is premature, misreads Plaintiff's complaint, and is nevertheless meritless.

Defendant interprets Plaintiff's request for injunctive relief—that Defendant be enjoined from delivering artificial or prerecorded voice messages without prior express consent, and that it be required to heed revocations of consent communicated to it—as a desire to certify a Rule

[10] To be sure, following *ACA Int'l*, courts within this Circuit have repeatedly found that "(a) the term 'consent' is properly read to incorporate common law principles and at common law consent may be revoked; (b) allowing consumers to revoke consent is in keeping with the remedial, consumer-protection purposes of the TCPA, and the concept of irrevocable consent is fundamentally at odds with the TCPA's statutory scheme; (c) the FCC has provided clear authority under the TCPA that consumer consent may be revoked at any time by any reasonable means, and that a caller may not unilaterally limit those means; and (d) . . . *ACA International* supports this analysis." *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 600 (M.D. Tenn. 2018); *see also Rodriguez v. Premier Bankcard, LLC*, No. 3:16CV2541, 2018 WL 4184742, at *15 (N.D. Ohio Aug. 31, 2018) (same).

23(b)(2) injunctive relief class. ECF No. 19-1 at 23-25. But Defendant's argument is little more than a solution in search of a problem, because, as Plaintiff indicated through her complaint, she intends to seek certification under Rule 23(b)(3).

Regardless, "[d]istrict courts may certify both a 23(b)(2) class for the portion of the case concerning injunctive and declaratory relief and a 23(b)(3) class for the portion of the case requesting monetary damages." *McMillion*, 2017 WL 3895764, at *10; *Marshall v. Grubhub Inc.*, No. 19-CV-3718, 2021 WL 4401496, at *9 (N.D. Ill. Sept. 27, 2021) (denying a motion to strike where "Grubhub maintains, however, that Marshall cannot demand injunctive relief because she seeks primarily monetary damages," because "Rule 8(a) provides that a plaintiff may plead alternative forms of relief, without tying herself to the mast of either. So, too here, Marshall was entitled to set forth two alternative forms of relief in her complaint, without either being stricken for inconsistency"); *Davis v. D.R. Horton Inc.*, No. CV 19-1686-LPS-JLH, 2020 WL 6042091, at *2 (D. Del. Oct. 13, 2020) (denying a motion to strike because "Davis seeks certification under Rule 23(b)(3), not Rule 23(b)(2). Moreover, even if Davis ultimately seeks injunctive and monetary relief, this Court could consider certifying the classes under Rules 23(b)(2) and 23(b)(3) concurrently."); *accord Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 234 (C.D. Cal. 2018) (finding class certification appropriate under both Rule 23(b)(2) and 23(b)(3)). And by preserving the availability of both Rule 23(b)(2) and 23(b)(3) classes, "[i]n the event that plaintiffs are able to demonstrate liability under the TCPA, but ultimately fail to establish classwide damages, the Court may still enter an injunction against defendant." *McMillion*, 2017 WL 3895764, at *10.

This does not mean, however, that Plaintiff will later attempt to avoid the predominance requirements of Rule 23(b)(3) by seeking certification of a damages class within the contours of Rule 23(b)(2)—she will not. But it does once again highlight the premature nature of Defendant's

motion to strike, given that Defendant's argument rests on a misunderstanding of Plaintiff's future motion for class certification. *See, e.g.*, *Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4698665, at *5 (N.D. Ill. Sept. 8, 2016) (declining to strike Rule 23(b)(2) and (b)(3) classes because the motion is "premature"); *Meyer v. Receivables Performance Mgmt., LLC*, No. C12-2013RAJ, 2013 WL 1914392, at *2 n.1 (W.D. Wash. May 8, 2013) (denying a motion to dismiss because the plaintiff "might choose not to certify her claims for damages, and ask instead to certify a Rule 23(b)(2) class" and "[t]he need to speculate about the future basis for class certification is one of many reasons that RPM's motion is premature.")

No matter, since Plaintiff does not explicitly request certification under Rule 23(b)(2), and instead seeks injunctive relief in concert with her request for statutory damages, and because Defendant has not presented any basis for striking Plaintiff's request for injunctive relief, this Court should deny Defendant's motion to strike on this basis.

## VI. This Court should not strike Plaintiff's request for trebled damages under the TCPA.

Defendant states that "whether each putative class member is entitled to recover treble damages is an individualized issue and not subject to class determination." ECF No. 19-1 at 21. It then reasons that because "Plaintiff's request for treble damages is not subject to class certification [it] should be stricken with prejudice." *Id*. at 22. Significantly, Defendant bases its argument on an apparent understanding that "whether a violation is willful or knowing will vary by each particular class member based on his/her own interactions and communications with [Defendant]." ECF No. 19-1 at 22. This, however, runs counter to prevailing precedent, and seems unsupportable considering the Fourth Circuit's opinion in *Krakauer v. Dish Network, L.L.C.*, through which it affirmed the district court's award of trebled damages to members of a certified TCPA class. *See* 925 F.3d 643, 662-63 (4th Cir. 2019), *cert. denied,* 140 S. Ct. 676 (2019).

From the outset, the TCPA provides that a plaintiff may bring "an action to recover for actual monetary loss from [a violation of the TCPA], or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). A defendant is therefore liable for no less than $500 in damages for each of its violations of the TCPA. *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997) ("§ 227(b)(3)(B) . . . provides for a minimum penalty of [$] 500 for each violation of the TCPA"); *see also Soppet*, 679 F.3d at 639 ("§ 227(b)(3) . . . authorizes an award of actual damages, or $500 per violation, whichever is greater"); *accord Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015) ("In plain terms, the statute allows a person to recover '$500 in damages for each' 'violation of this subsection.' Section 227(b)(1) has no language limiting the recovery to $500 per 'call' or 'fax.'").

The TCPA additionally permits a court to treble the mandatory $500 per-violation award "[i]f the court finds that the defendant willfully or knowingly violated" the TCPA. 47 U.S.C. § 227(b)(3)(C); *see also Soppet*, 679 F.3d at 639 (explaining that the $500 per violation awards are "trebled for wilful violations"). The operative question is, then: What constitutes a knowing and willful violation?

Although the TCPA does not define "willfully," the Communications Act—of which the TCPA is a part—does. It states that "the term willful . . . means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter." 47 U.S.C. § 312. Of course, "[i]dentical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990). So it follows that a court may treble the TCPA's mandatory $500 per-violation award where a defendant consciously and deliberately delivers artificial or prerecorded voice messages at issue, even if the defendant does not specifically intend to violate the TCPA.

It is also in line with the FCC's interpretation—that "[w]illful . . . means that the violator knew that he was doing the act in question . . . . A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mortg., LLC*, 22 F.C.C. Rcd. 9453, 9470 n.86 (May 14, 2007).

Moreover, a close look at the term "knowing" mandates the same conclusion—that a court may treble the TCPA's mandatory $500 per-violation award even if a defendant does not know that its conduct violates the TCPA. Stating as much, the Eleventh Circuit explained that "the intent for treble damages [under the TCPA] does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct." *Alea London Ltd.*, 638 F.3d at 776; *accord Sengenberger v. Credit Control Servs., Inc.*, No. 09C2796, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010) (holding that the defendants "knowingly and willfully made the phone calls," based upon nothing more than a finding that they "intentionally made the contested phone calls to Plaintiff"), *adhered to on reconsideration*, 2010 WL 6373008 (N.D. Ill. June 17, 2010).

Here, Defendant delivered artificial or prerecorded voice messages to Plaintiff's cellular telephone voluntarily and under its own free will, and had knowledge that it was using an artificial or prerecorded voice to deliver the messages it did to Plaintiff's telephone. *See* ECF No. 1 at 6, ¶¶ 31-33. Nothing more is required to demonstrate Defendant's "willful or knowing" conduct. Thus, Defendant's contention that "whether a violation is willful or knowing will vary by each particular class member based on his/her own interactions and communications with [Defendant]," ECF No. 19-1 at 22, is without merit. *See Hossfeld v. Lifewatch, Inc.*, No. 1:13-CV-9305, 2021 WL 1422785, at *8 (N.D. Ill. Feb. 5, 2021) (granting summary judgment as to entitlement to treble damages for a certified class).

In fact, not only does Defendant cite no authority striking TCPA class allegations based on a claim for treble damages, the authority Defendant cites betrays its position. Specifically, in *Harris v. World Fin. Network Nat. Bank*, the court granted summary judgment for the plaintiff on his claim for treble damages "for the phone calls and prerecorded messages Defendants placed to Plaintiff's cellular phone after August 23, 2010—the date on which Plaintiff first notified Defendants that they had the wrong number and that he was not associated with Morgan." 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012). In other words, *Harris* suggests that treble damages are appropriate for members of Plaintiff's second proposed class, who received "phone calls and prerecorded messages" after they "notified Defendant[] that [it] had the wrong number." *Id.*

And the Fourth Circuit's decision in *Krakauer* compels such a finding. There, in affirming the district court's award of trebled damages to members of the certified class, the court concluded: "Trebling is never to be done lightly. Given the consequences for a company, a trebled award must rest on solid evidence. Here there was." *Krakauer*, 925 F.3d at 662-63.[11]

---

[11] Also of note, in each of the eight matters that Plaintiff references above in which courts certified a "wrong number" TCPA class, the named plaintiffs sought trebled damages. *See Wesley v. Snap Fin. LLC*, No. 2:20-CV-148-RJS-JCB (D. Utah Dec. 4, 2020) (trebled damages sought in amended complaint, ECF No. 40); *Knapper v. Cox Commc'ns, Inc.*, No. 2:17-cv-00913-SPL (D. Ariz. Mar. 28, 2017) (trebled damages sought in complaint, ECF No. 1); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman (S.D. Fla. Sept. 23, 2016) (trebled damages sought in complaint, ECF No. 1); *Lavigne v. First Community Bancshares, Inc.*, No. 1:15-cv- 00934-WJ/LF (D.N.M. May 20, 2016) (trebled damages sought in amended complaint, ECF No. 41); *West v. Cal. Servs. Bureau, Inc.*, No. 4:16-cv-03124-YGR (N.D. Cal. Dec. 13. 2016) (trebled damages sought in amended complaint, ECF No. 25); *Johnson v. Navient Solutions, Inc.*, No. 1:15-cv-00716-LJM-MJD (S.D. Ind. May 4, 2015) (trebled damages sought in complaint, ECF No. 1); *Abdeljalil v. Gen. Elec. Capital Corp.*, No. 3:12-cv-02078-JAH-MDD (S.D. Cal. Aug. 22, 2013) (trebled damages sought in third amended complaint, ECF No. 34); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR (N.D. Cal. June. 17, 2016) (trebled damages sought in complaint, ECF No. 1). So, to the extent Defendant's argument can be read to suggest that a request for trebled damages under the TCPA serves as a basis to strike class allegations, such an argument flies in the face of decisions spanning the country.

Dated: November 30, 2021

*/s/ Aaron D. Radbil*
Aaron D. Radbil
GREENWALD DAVIDSON RADBIL PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone: (512) 803-1578
aradbil@gdrlawfirm.com

*Counsel for Plaintiff and the proposed classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2021, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide notice to all counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil